UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMIE RAYNES, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 08-5018 C/W 10-1730** |
| | **(REF: 08-5018)** |
| **MCMORAN EXPLORATION COMPANY, ET AL.** | **SECTION "I"** |

## ORDER AND REASONS

Before the Court is a motion[1] for partial summary judgment filed by plaintiff, Jamie Raynes ("Raynes"), to dismiss the complaint of intervention filed by Grasso Production Management, Inc. ("Grasso") and Signal Mutual Indemnity Association, Ltd. ("Signal") (collectively, "intervenors"). Intervenors oppose[2] the motion. For the following reasons, the motion is **GRANTED**.

### *BACKGROUND*

Raynes was working on the West Delta 24-F1 platform ("platform") in Louisiana waters on September 24, 2008, when he was allegedly injured after his foot pierced a defective portion of the platform deck.[3] On the date of Raynes's injury, Grasso employed Raynes as its lead operator in charge of the platform.[4] McMoRan Exploration Company ("McMoRan") owned the platform.[5] Raynes filed this lawsuit against McMoRan; Production Services Network U.S., Inc. ("PSN"), a contractor which allegedly inspected the platform prior to his accident; Newfield

---

[1] R. Doc. No. 192.
[2] R. Doc. Nos. 201 and 251.
[3] R. Doc. No. 1, p. 2. At the time Raynes was injured, the parties believed that the platform was located on the Outer Continental Shelf and Raynes filed his lawsuit pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331, *et seq*. R. Doc. No. 1, p. 2. The parties later discovered that the platform was actually located in Louisiana waters. R. Doc. No. 188-1, p. 4.
[4] R. Doc. No. 14, p. 1.
[5] R. Doc. No. 1, p. 2.

Exploration Company ("Newfield"), the platform's prior owner; and Petro Construction Management, LLC ("Petro"), a contractor McMoRan retained to perform repair work on McMoRan-owned platforms.  Newfield and Petro have been dismissed from this lawsuit, leaving only McMoRan and PSN as defendants.

At all relevant times Grasso has been insured by Signal for benefits paid to employees pursuant to the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA," 33 U.S.C. § 901, *et seq.*) for injuries and/or death that its employees suffer in the course of their employment.[6]  Intervenors have paid Raynes LHWCA benefits since the date of his accident.[7] Intervenors sought and were granted leave to file a complaint of intervention to recover benefits paid to Raynes from any tort award he may receive in judgment against, or from any settlement with, the defendants.[8]

In his motion for partial summary judgment, Raynes argues that the complaint of intervention must be dismissed because, pursuant to the 2004 Master Services Agreement ("MSA") between Grasso and McMoRan, as well as a specific endorsement in the relevant insurance policy, intervenors waived any rights to subrogation with respect to LHWCA benefits paid to Raynes for his injuries.[9]  Intervenors counter that such a waiver of subrogation is invalid based on the rationale of *Fontenot v. Chevron U.S.A., Inc.*, 676 So.2d 577 (La. 1996), because Grasso has been defending and indemnifying McMoRan at all relevant times.[10]

---

[6] R. Doc. No. 14, p. 2.
[7] R. Doc. No. 201, p. 1.
[8] R. Doc. Nos. 11, 13 and 14.
[9] R. Doc. No. 192-1, p. 2.
[10] R. Doc. No. 201, p. 2.

*LAW AND ANALYSIS*

**I.       Summary Judgment Standard**

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex,* 477 U.S. at 323; *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1195 (5th Cir.1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating " 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be

drawn in [the nonmoving party's] favor." *Id.* at 255; *see Hunt v. Cromartie,* 526 U.S. 541, 552 (1999).

## II.     The Waiver of Subrogation

Grasso and McMoRan entered into an agreement for offshore services in February 2004.[11]  Articles 7.4 and 7.4.1 of the MSA require Grasso to provide workers' compensation insurance and coverage in compliance with the LHWCA and OCSLA "where appropriate."[12] Article 7.4.7[13] further mandates that:

> The required insurance listed in all paragraphs above shall be endorsed to include a waiver of subrogation in favor of the Owner Indemnified Parties.[14]  The required insurance listed in subsections 3, 4, 5 and 6 of this Section 7.4 shall be endorsed to name all of the Owner Indemnified Parties as additional insureds and such insurance shall be primary as respects any other insurance that may be available to such additional insureds.  Contractor's obligation to have its insurance endorsed to include a waiver of subrogation in favor of the Owner Indemnified Parties and to name the Owner Indemnified Parties as additional insureds are applicable only to the extent of the liabilities and obligations assumed by [Grasso] under this Agreement.

---

[11] R. Doc. No. 192-3.  Throughout the MSA, the term "OWNER" refers to McMoRan and the term "CONTRACTOR" refers to Grasso.  *Id.* at p. 1.

[12] R. Doc. No. 192-3, pp. 5-6.

[13] R. Doc. No. 192-3, p. 7.

[14] With respect to "Owner Indemnified Parties," Article 5.1 states that:

> [Grasso] shall protect, indemnify, defend and save harmless: (i) [McMoRan], (ii) any parent, subsidiary or other affiliate of [McMoRan], (iii) any and all co-venturers and co-owners of oil, gas or mineral properties, (iv) any and all of the respective employees, agents, contractors, subcontractors, consultants, shareholders, members, directors, officers or assigns of each of the persons or entities described in (i) through (iii), and (v) the insurers and subrogees of each of the persons or entities described in (i) through (iv) (collectively the "Owner Indemnified Parties") from and against all claims, demands or causes of action of every kind and character for bodily injury or death of, or for property damage or loss sustained by, [Grasso] or [Grasso's] employees, subcontractors or consultants arising directly or indirectly out of the Work under this Agreement unless caused by the gross negligence or willful misconduct of [McMoRan].  For the purposes of this Article 5.0, the reference to the contractors of [McMoRan] does not refer to [Grasso] hereunder.

R. Doc. No. 192-3, pp. 4-5.

4

Pursuant to Article 7.4.7, Grasso's insurers waived subrogation in favor of McMoRan and McMoRan's subcontractors.[15]

Intervenors acknowledge that they have waived their right to recover workers' compensation benefits from third-party tortfeasors.[16] Nevertheless, they argue that because the MSA also requires Grasso to defend and indemnify the parties in whose favor subrogation was waived, this waiver is unenforceable.[17] Intervenors rely on the Louisiana Supreme Court's rationale in *Fontenot v. Chevron U.S.A., Inc.*, 676 So.2d 577 (La. 1996), for their assertion that their waiver of subrogation is unenforceable and, consequently, that the Court cannot dismiss their complaint of intervention.[18]

In *Fontenot*, a Hercules Offshore Drilling Company ("Hercules") employee was injured on a platform owned by Chevron, USA, Inc. ("Chevron"). *Fontenot*, 676 So.2d at 558-59. The contract between Chevron and Hercules required Hercules to provide LHWCA insurance coverage for its employees. *Id.* The contract also required Hercules to waive its right, "and consequently its insurer's right," to subrogation for any benefits it might be obligated to pay. *Id.* The worker's compensation policy covering the employee contained such a waiver of subrogation. *Id.* The issue before the Louisiana Supreme Court was whether the waiver of subrogation in the policy was invalid *vis-à-vis* the Louisiana Oilfield Anti-Indemnity Act ("LOAIA"). *Id.* In its decision, the *Fontenot* Court interpreted the relevant sections of LOAIA which provide:

---

[15] R. Doc. Nos. 201-4, p. 2 and 263-5, p.1.
[16] R. Doc. No. 201-4, p. 2.
[17] R. Doc. No. 201, p. 2. Intervenors have been providing McMoRan with defense and indemnity for the claims Raynes has asserted against McMoRan. R. Doc. No. 201-2, p. 2. Furthermore, in this Court's June 14, 2011 order, this Court determined that the 2004 Grasso-McMoRan MSA requires Grasso to also defend and indemnify Petro. R. Doc. No. 182.
[18] R. Doc. No. 201 p. 201, pp. 5-9.

>Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee. . . .
>
>Any provision in any agreement . . . which requires waivers of subrogation, additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the prohibitions of this Section, shall be null and void and of no force and effect.

La. Rev. Stat. §§ 9:2780(B) and (G). With respect to these provisions, the Louisiana Supreme Court concluded that "voiding a waiver of subrogation clause only achieves the purpose of [LOAIA] when such a clause is sought to be enforced in conjunction with the enforcement of an indemnification clause." *Fontenot*, 676 So.2d at 565. Only when the two provisions work in tandem, the court reasoned, is LOAIA implicated because the injured worker's employer would be responsible for both worker's compensation benefits and the third-party tort claim. *Id.* As Chevron was not seeking to enforce an indemnification clause, the *Fontenot* court did not find the waiver of subrogation invalid because it did not "frustrate or circumvent the prohibitions" of LOAIA. *Id.*

Intervenors argue that had the Louisiana Supreme Court in *Fontenot* been faced with the factual situation present in this case – whereby Grasso is defending and indemnifying McMoRan, as well as having waived subrogation in McMoRan's favor – the court would have invalidated the waiver of subrogation. LOAIA's applicability to the MSA turns on the question of whether a two-part test is satisfied: "(1) whether the agreement pertains to an oil, gas or water well; and (2) whether the agreement relates to the exploration, development, production, or

6

transportation of oil, gas, or water." *Hudson v. Forest Oil Corp.*, 372 F.3d 742, 745 (5th Cir. 2004) (citing *Fontenot*, 676 So.2d at 564). The parties agree that LOAIA does not apply.[19] Regardless, intervenors urge that the Court recognize that "the situation here is precisely the type of scenario wherein Louisiana law should invalid waivers of subrogation."[20]

The Court notes that Louisiana law generally allows waivers of subrogation. *Alexie v. Bisso Marine Co.*, 2009 WL 1507307, at *1 (E.D. La. May 28, 2009) (Vance, J.) (citing *Hudson v. Forest Oil*, 2003 WL 21276385, at *4 (E.D. La. June 2, 2003), *aff'd* 372 F.3d 742 (5th Cir. 2004)); *E.S. Upton Printing Company v. Gomila*, 674 So.2d 422 (La. App. 4th. Cir. 1996) (interpreting statute permitting waivers of subrogation where such a waiver is "clear and explicit"). Moreover, with respect to whether a waiver of subrogation is invalid, the court in *Fontenot* specifically interpreted LOAIA's terms. *Fontenot*, 676 So.2d at 562-65. Only when a waiver of subrogation might run afoul of LOAIA would Louisiana's general rule permitting waivers of subrogation not apply. *Id.* at 565. Consequently, as the parties agree that LOAIA is inapplicable in this case, the Court will not look to LOAIA or the cases interpreting it when determining whether an otherwise valid waiver of subrogation is enforceable.

The Louisiana Supreme Court and the Fifth Circuit have held that when an intervenor has waived the right to recoup worker's compensation benefits, the complaint of intervention must be dismissed. *Fontenot*, 676 So.2d at 566; *Hudson*, 372 F.3d at 743-44, 478. An injured employee may enforce a waiver of subrogation as a third-party beneficiary. *Alexie*, 2009 WL

---

[19] R. Doc. Nos. 263, p. 5 and 264, p. 1.
[20] R. Doc. No. 251, p. 4.

1507307, at *1 (citing *Fontenot*, 676 So.2d at 566).  Intervenors here acknowledge that they have waived subrogation.[21]

Accordingly,

**IT IS ORDERED** that Raynes's motion for partial summary judgment is **GRANTED** and that intervenors' complaint of intervention is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, September 19th, 2011.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[21] R. Doc. Nos. 201-4, p. 2 and 263-5, p.1.